1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10   WES JOHN VANDEVOORT,

11                              Plaintiff,

12          v.

13   NANCY BERRYHILL, Acting
     Commissioner of Social Security
14   Administration,[1]

15                              Defendant.

CASE NO. 3:16-CV-05493-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

16

17        Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

denial of Plaintiff's application for Disability Insurance Benefits ("DIB"). The parties have

18   consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R.

19   Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

20   United States Magistrate Judge, Dkt. 6.

21

22

23

24

---

     [1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, as Acting
Commissioner of Social Security. Fed. R. Civ. P. 25(d).

1       After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

2  did not err by declining to obtain a consultative examination or additional medical expert

3  testimony. The ALJ also did not err by finding Plaintiff failed to meet the requirements of a

4  listing, by discounting Plaintiff's subjective symptom testimony, or by finding Plaintiff was

5  capable of performing work existing in significant numbers in the national economy. Therefore,

6  this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

7                **PROCEDURAL& FACTUAL HISTORY**

8       On August 16, 2013, Plaintiff filed an application for DIB, and on October 23, 2013,

9  Plaintiff amended his application. *See* Dkt. 9, Administrative Record ("AR") 456-59. Plaintiff

10  alleges he became disabled on April 1, 2012, due to posttraumatic stress disorder ("PTSD"),

11  carpal tunnel syndrome, anxiety, history of pulmonary embolism, mood disorder, bilateral

12  shoulder impingement, lumbosacral strain, limited motion of the right hip, patella femoral

13  syndrome (bilateral), and chronic prostatitis. *See* AR 458, 488.  Plaintiff's application was denied

14  upon initial administrative review and on reconsideration. *See* AR 319-45. A hearing was held

15  before an ALJ on September 9, 2014, at which Plaintiff, represented by counsel, appeared and

16  testified. *See* AR 210. Based on the content of the first hearing, Plaintiff filed objections to the

17  testimony of the Vocational Expert, Steve Duchesne. AR 19-20. The ALJ held a supplemental

18  hearing on June 10, 2015, at which Plaintiff, Mr. Duchesne, and Dr. Joseph Moisan, a second

19  Vocational Expert, appeared and testified. AR 72.

20       On December 23, 2015, the ALJ found Plaintiff was not disabled within the meaning of

21  Sections 216(i) and 223(d) of the Social Security Act. AR 61. Plaintiff's request for review of the

22  ALJ's decision was denied by the Appeals Council on April 20, 2016, making that decision the

23  final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20

24

C.F.R. § 404.981, § 416.1481. On June 17, 2016, Plaintiff filed a complaint in this Court seeking

judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further

proceedings, because the ALJ: 1) failed to resolve an ambiguity in the medical evidence by

obtaining an additional consultative examination; 2) improperly found Plaintiff did not meet the

requirements of a Listing; 3) improperly discounted Plaintiff's subjective symptom testimony; 4)

failed to account for Plaintiff's chronic pain in the residual functional capacity ("RFC"); and 5)

failed to support his finding at Step Five with substantial evidence. Dkt. 13, pp. 1-2.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

security benefits only if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

**DISCUSSION**

I.      Whether the ALJ Erred by Failing to Order a Physical and Mental Consultative
        Examination

Plaintiff argues the ALJ erred by failing to order physical and mental consultative

examinations, or otherwise failing to call an expert in mental health to testify at a supplemental

hearing. Specifically, Plaintiff argues the testimony of consulting cardiologist Dr. Alan West,

M.D. at Plaintiff's first hearing created an ambiguity which triggered the ALJ's duty to develop

the record. Dkt. 13, pp. 6-9.

ORDER ON PLAINTIFF'S COMPLAINT - 3

During Plaintiff's first hearing, the ALJ called Dr. West as a consulting medical expert witness to offer an opinion as to Plaintiff's functional limitations. AR 211-37. Of relevance to this analysis, Dr. West testified to several issues:

- Dr. West summarily opined that the significant mental health issues reflected in the medical records "may in fact be at the level of the Commissioner's . . . listings." AR 218.

- Dr. West opined to certain exertional limitations, such as a limitation to light work with the additional restriction that Plaintiff could stand/walk no more than four hours in an eight-hour workday, and could not push, pull, or lift objects overhead. AR 220, 231.

- Dr. West opined to certain postural limitations, such as no more than occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching, and crawling; and no balancing. AR 220.

- Dr. West opined to certain manipulative limitations, such as occasional handling and fingering. AR 220-21.

- Throughout his testimony Dr. West also indicated he believed a consultative physical examination would clarify whether and to what extent Plaintiff's carpal tunnel syndrome would cause manipulative limitations. AR 223, 229, 237.

Though the ALJ gave significant weight to Dr. West's exertional limitations, the ALJ discounted Dr. West's opinion as to Plaintiff's mental health for three reasons:

[1] Dr. West's primary specialty is cardiovascular disease, with a secondary specialty in internal medicine. [AR 419] His expertise therefore does not include mental health issues. The undersigned finds it doubtful that he would have occasion in particular to study the mental health listings and therefore concludes that the doctor is not qualified to provide a medical opinion on this issue. [2] Furthermore, as discussed throughout this decision and specifically in the

paragraphs immediately above, neither the claimant's symptoms [3] nor his reported activities satisfy the 12.00 listings. The undersigned therefore gives very little weight to Dr. West's opinion regarding the claimant's mental health impairments.

AR 28-29. The ALJ also discounted Dr. West's opinion as to Plaintiff's postural and manipulative limitations, due to inconsistencies with Plaintiff's activities of daily living, as well as inconsistencies with the medical record. AR 51.

The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). For example, this Court has previously found that, where a treating rheumatologist's notes were indecipherable and illegible, the ALJ had a duty to re-contact the physician to determine whether Plaintiff's fibromyalgia constituted a medically determinable impairment pursuant to SSR 12-2p. *See Williams v. Colvin*, 2015 WL 7018724, at **3-4 (W.D. Wash. Nov. 10, 2015). Also, where an ALJ relies on a medical expert who indicates the record is insufficient to render a diagnosis, the ALJ must develop the record further. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). But, where the record, taken as a whole, is adequate to evaluate a claimant's alleged impairment, the ALJ's duty to develop the record is not implicated. *See, e.g.*, *Baghoomian v. Astrue*, 319 Fed.Appx. 563, 566 (9th Cir. 2009); *H'Oar v. Barnhart*, 51 Fed.Appx. 731, 732 (9th Cir. 2002).

The *Tonapetyan* case is particularly instructive. In *Tonapetyan*, the ALJ relied heavily on the opinion of a consulting medical expert. *Tonapetyan*, 242 F.3d at 1150.  However, the consulting medical expert repeatedly expressed his concern that the record was insufficient to

1   allow him to render an opinion on some of Plaintiff's alleged severe impairments. *Id.* Further, the

2   medical expert explicitly recommended the ALJ obtain additional medical evidence from the

3   claimant's treating psychologist. *Id.*  By giving great weight to the consulting medical expert yet

4   failing to follow through with the consulting expert's recommendations, the Ninth Circuit found

5   the ALJ failed to follow his independent duty to develop the medical record. *Id.* at 1151.

6          Here, by contrast, Dr. West did not suggest additional psychological examinations were

7   necessary to evaluate whether Plaintiff met the requirements of a mental health listing. Nor did

8   the ALJ rely on Dr. West's opinions concerning Plaintiff's mental health. Rather, Dr. West

9   offered a vague and conclusory opinion on the issue of Plaintiff's mental health, without

10  identifying which mental health listing he believes Plaintiff satisfied. AR 218. Further, Dr. West

11  acknowledged he was not a mental health expert, and indicated he did not feel he was qualified

12  to render a more thorough opinion. AR 218.

13         Importantly, the ALJ cited to substantial evidence to discount this aspect of Dr. West's

14  opinion. *See* AR 28, 50-51. The ALJ considered the criteria enumerated in paragraphs A, B, and

15  C of listings 12.02, 12.04, 12.06, and 12.09, and found Plaintiff had no more than mild

16  difficulties in activities of daily living, moderate difficulties in social functioning, moderate

17  difficulties in concentration, persistence, or pace, and no episodes of decompensation of

18  extended duration. AR 27-28. In making these findings, the ALJ cited to evidence Plaintiff's

19  social functioning and activities of daily living were not significantly impacted. For instance,

20  Plaintiff consistently reported he engaged in outdoor and indoor home maintenance activities,

21  worked as the stay-at-home parent for two young children, and volunteered at the American

22  Legion. AR 27, 675, 697-98, 728, 745, 1920. The ALJ also noted Plaintiff socialized with

23  friends, family, and strangers, including visiting his neighbors, socializing at the American

24

1  Legion, and going camping with friends. AR 27-28, 675, 697-98, 728, 745, 1920. Finally, the

2  ALJ noted medical examinations revealed intact cognition during evaluations for traumatic brain

3  injury. AR 28. The ALJ indicated these findings contradicted Dr. West's opinion Plaintiff met

4  the criteria of an unspecified mental health listing.[2]

5        As for physical limitations, Dr. West indicated he would need an additional consultative

6  examination in order to assess whether Plaintiff's carpal tunnel syndrome imposed restrictions on

7  Plaintiff's functioning. AR 223, 229, 237. However, unlike the ALJ in *Tonapetyan*, the ALJ in

8  this case explicitly discounted Dr. West's opinion Plaintiff was limited to occasional

9  manipulative activities, as Dr. West's opinion was inconsistent with the medical evidence of

10  record. AR 51. The ALJ also exhaustively reviewed the balance of the medical evidence, and

11  concluded Plaintiff's carpal tunnel syndrome was not a severe impairment at Step Two of the

12  sequential evaluation. AR 23-25. Rather than demonstrating an ambiguity in the evidence or an

13  inadequate record from which the ALJ could reach a conclusion, Plaintiff has, at best, raised a

14  disagreement between his interpretation of the record and the ALJ's interpretation. But, when the

15  evidence admits of more than one rational interpretation, sole authority for interpreting the

16  evidence rests with the ALJ. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th

17  Cir. 1999).

18        Finally, Plaintiff makes an argument premised on the size of the medical record.

19  Essentially, Plaintiff argues that because the medical record was voluminous and addresses a

20  constellation of mental health issues, the ALJ needed to call a mental health expert or arrange for

21

22  _____

23  [2] Plaintiff did not challenge these findings in his opening brief. Instead, Plaintiff argues the ALJ's third reason for discounting Dr. West's opinion—that he was not a specialist in mental health—was erroneous. Because the ALJ offered other reasons for discounting Dr. West's

24  opinion which Plaintiff did not challenge, the Court need not address this argument.

a consultative psychological examination in order to interpret this evidence. Dkt. 13, p. 7.

However, Plaintiff's argument is contrary to the regulations and this Circuit's case law. The ALJ

has the responsibility to determine credibility and resolve conflicts in the medical evidence.

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Where the medical evidence in the record

is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of

the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Determining whether or not

inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and

whether certain factors are relevant to discount" the opinions of medical experts "falls within this

responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

      Critically, the ALJ did not find the mental health records were inadequate to make a

determination regarding Plaintiff's disability. Rather, the ALJ disagreed with Plaintiff's

interpretation of the record, and gave significant weight to the opinions of state agency

psychological consultants Matthew Comrie, Psy.D. and Sharon Underwood, Ph.D. AR 54-55.

The ALJ considered Dr. Comrie and Dr. Underwood's review of the mental health records and

incorporated their moderate limitations in social interaction and concentration, persistence, and

pace into the RFC. *See* AR 29, 327-29, 342-43. The ALJ's decision was supported by substantial

evidence, and the ALJ did not err by failing to call an additional medical expert. *See Thomas v.

Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (holding an ALJ's duty to develop the record was

not triggered where the ALJ discredited a physician's opinion, rather than finding the record was

inadequate to allow further review).

II.    <u>Whether the ALJ Erred by Failing to Find Plaintiff Met the Requirements of a
Listing.</u>

      Plaintiff also argues that the ALJ erred by failing to find Plaintiff met the requirements of

a listing, based on the testimony of Dr. West.

1    The ALJ has the responsibility to determine whether a claimant has an impairment or

2    combination of impairments that meets or equals a condition outlined in a Listing. *See* 20 C.F.R.

3    §§ 404.1520(d), 416.920(d). *See also Caine v. Astrue*, 2010 WL 2102826, at *6 (W. D. Wash.

4    April 14, 2010). The Listings describe specific impairments that are considered "severe enough

5    to prevent an individual from doing any gainful activity regardless of his or her age, education,

6    or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). When assessing whether a medically

7    determinable severe mental impairment meets the criteria of a listing, an ALJ must evaluate the

8    degree of a claimant's functional limitation across four factors: a claimant's activities of daily

9    living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

10   20 C.F.R. § 404.1520a(b)(3) (2011).[3]

11   Plaintiff argues the ALJ erred by disregarding Dr. West's statement that Plaintiff may

12   meet the requirements of a mental health listing. However, it is striking to the Court that Dr.

13   West never states *which* mental health listing he believes Plaintiff satisfies. Indeed, Plaintiff

14   himself never argues which mental health listing he believes he satisfies. *See* Dkt. 13, pp. 6-9.

15   Plaintiff has the burden of demonstrating harmful error, and Plaintiff's failure to articulate this

16   argument with sufficient specificity means it is waived. *See Shinseki v. Sanders*, 556 U.S. 396,

17   410 (2009). *See also Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006), *Bisuano v. Colvin*,

18   

19   

20   [3] Effective January 17, 2017, these four factors have been replaced with the following: a
claimant's ability to understand, remember, or apply information; interact with others;
concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(b)(3)

21   (2017). However, the recent revisions could not apply to the ALJ decision at issue before this
court, as 42 U.S.C. § 405 does not contain any express authorization from Congress allowing the

22   Commissioner to engage in retroactive rulemaking. *See Bowen v. Georgetown Univ. Hosp*, 488
U.S. 204, 214-215 & n.3 (1988); *Garner v. Colvin*, 626 Fed.Appx. 699, 701 (9th Cir. 2015). *See*

23   *also Portlock v. Barnhart*, 208 F.Supp.2d 451, 456 (D. Del. June 24, 2002) (holding the
application of a recently-revised SSR to an applicant's pending claim on appeal would constitute

24   an impermissible retroactive application of an agency rule) (*citing Bowen*, 488 U.S. at 224).

584 Fed.Appx. 512, 514 (9th Cir. 2014). In any event, as described in Section I, above, the ALJ analyzed Plaintiff's functional limitations for the criteria established in Listings 12.02, 12.04, 12.06, and 12.09, and found Plaintiff had no more than mild and moderate limitations, and no episodes of decompensation, across the four factors. AR 27-28, 675, 697-98, 728, 745, 1920. Plaintiff has not demonstrated how the ALJ's analysis was legally erroneous or unsupported by substantial evidence.

III.    Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by Substantial Evidence, for Discounting Plaintiff's Subjective Symptom Testimony.

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair*, 885 F.2d at 604. *See also Thomas*, 278 F.3d at 954  ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should

1  properly be discounted does not render the ALJ's determination invalid, as long as that

2  determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

3        The ALJ offered several reasons for discounting Plaintiff's subjective symptom

4  testimony.  The ALJ found the objective medical evidence in the record was inconsistent with

5  Plaintiff's testimony concerning the severity of his pain and other symptoms. AR 30-48. *See*

6  *Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). "While

7  subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

8  by objective medical evidence, the medical evidence is still a relevant factor in determining the

9  severity of the claimant's pain and its disabling effects." *See Rollins v. Massanari*, 261 F.3d 853,

10  857 (9th Cir. 2001) (*citing* 20 C.F.R. § 404.1529(c)(2)). For example, while Plaintiff testified to

11  side effects such as fatigue as a result of his medications, the ALJ notes the medical records

12  consistently indicate Plaintiff denied side effects from his medications. AR 745, 1827-28, 1836,

13  1905. Also, though Plaintiff testified to back and knee pain, the ALJ noted objective evidence

14  reflected normal range of motion and gait, as well as reports of minimal pain. AR 46, 676, 754,

15  1320, 1727, 1857, 1876, 2615, 2627, 2630. The ALJ also discounted Plaintiff's testimony

16  because it was inconsistent with his activities of daily living. *See Orn v. Astrue*, 495 F.3d 625,

17  639 (9th Cir. 2007). For example, the ALJ observed that despite Plaintiff's testimony he needed

18  to nap and/or lay down for four to six hours every day, he was the sole caregiver to preschool age

19  children during the period at issue. AR 47-48. 697-98. Third, the ALJ discounted Plaintiff's

20  testimony due to inconsistent statements he made during the hearing and to medical providers

21  concerning his drug and alcohol use. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (noting an

22  ALJ may rely on "ordinary techniques of credibility evaluation"). For example, while Plaintiff

23  testified he did not use marijuana until after it first became legal in Washington State (AR 267-

24

ORDER ON PLAINTIFF'S COMPLAINT - 11

68), the record reflects marijuana use throughout the period at issue. AR 667,671, 679, 743, 948, 1263, 1863, 1866, 1876. These were specific, clear and convincing reasons for the ALJ to discount Plaintiff's testimony, and the ALJ did not err by relying on them.

Notably, Plaintiff does not challenge any of the ALJ's reasons for discounting his testimony. Instead, Plaintiff argues the ALJ's entire evaluation of Plaintiff's testimony is flawed because "it is clear [the ALJ] had an agenda with the [medical expert, Dr. West] and was not going to go beyond the reasons why he wanted a[ medical expert]." Dkt 13, pp. 11-12. Plaintiff's argument has no merit. Plaintiff does not cite to any evidence in the record which would reflect the ALJ's purpose in obtaining Dr. West's testimony was to pursue "an agenda" against Plaintiff. Further, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). And, most importantly, "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased." *Rollins*, 261 F.3d at 857-58. Absent some evidence of actual improprieties in the ALJ's conduct, Plaintiff's unsubstantiated allegations of the ALJ's purported "agenda" provides no basis for this Court to reverse the ALJ's decision.

IV.   Whether the ALJ Failed to Include all of Plaintiff's Credible Limitations in the Hypotheticals to the Vocational Expert, or Otherwise Erred in Relying Upon the Vocational Expert's Testimony.

If a claimant cannot perform his or her past relevant work, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do at Step Five of the sequential evaluation. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

Plaintiff offers several arguments as to why the ALJ's Step Five Finding was error. First, Plaintiff argues the ALJ failed to discuss the impact of chronic pain on Plaintiff's ability to perform work activity and thus propounded an incomplete hypothetical to the Vocational Expert. However, Plaintiff's argument is squarely contradicted by the ALJ's written decision, which discusses Plaintiff's complaints of pain in his knees, neck, mid back, low back, shoulders, and pain arising out of migraines. AR 25-26, 30, 46. The ALJ also discussed Plaintiff's claims that his chronic pain and associated pain medication imposed additional limitations, such as a requirement he lie down for four to six hours per day, and fatigue as a side effect of his pain medication. AR 30, 47-48. As discussed more thoroughly in Section III, above, the ALJ properly discounted Plaintiff's subjective symptom testimony, including Plaintiff's testimony concerning the effects and severity of his pain. Plaintiff has failed to demonstrate error in the ALJ's evaluation of Plaintiff's testimony concerning his chronic pain.

Second, Plaintiff argues the ALJ erroneously found Plaintiff could perform light work, despite the fact the ALJ limited Plaintiff to standing/walking for no more than four hours in an eight hour work day. However, Plaintiff's argument misstates both the ALJ's decision and the requirements of Social Security Ruling ("SSR") 83-10. SSR 83-10 indicates that for an individual to be able to perform the full range of light work, an individual must be able to lift no more than 20 pounds at a time, lift or carry no more than 10 pounds frequently, and must be able to stand or walk, off and on, for a total of approximately six hours in an eight-hour workday. SSR 83-10, *available at* 1983 WL 31251, at *5-6. However, the ALJ did not find Plaintiff was capable of the full range of light work. AR 29. Instead, by finding Plaintiff could not stand or walk for more than four hours in an eight hour day, the ALJ found Plaintiff could perform less than the full range of light work. AR 29 ("the undersigned finds that the claimant has the [RFC]

1 to perform light work . . . except that he [is] able to stand/walk for four hours in an 8-hour

2 workday . . . ."). Based on this RFC, the ALJ consulted with a Vocational Expert[4] in order to

3 determine whether there were a significant number of jobs in the national economy which

4 Plaintiff could perform. AR 57. This was proper.

5      The effect of a limitation to less than the full range of light work is illustrated by the

6 ALJ's application of the Grids in this case. When an ALJ finds a claimant has the RFC to

7 perform the full range of sedentary, light, medium, or heavy work, and the claimant does not

8 have any other non-exertional limitations, the ALJ must consider whether the Grids direct a

9 finding of disability or non-disability. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. However, an

10 ALJ cannot apply the Grids when a claimant is capable of performing some, but not all, of the

11 full range of sedentary, light, medium, or heavy work. *See Tackett*, 180 F.3d at 1103-04. Instead,

12 "when a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his

13 obligation to determine the claimant's occupational base by consulting a vocational expert

14 regarding whether a person with claimant's profile could perform substantial gainful work in the

15 economy." *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (*citing Moore v. Apfel*, 216

16 F.3d 864, 870-71 (9th Cir. 2000)).

17      While the full range of light work requires a claimant to satisfy both the lifting/carrying

18 and standing/walking requirements, the Commissioner's regulations do not require a claimant to

19 be able to lift twenty pounds occasionally and ten pounds frequently, as well as stand and/or

20 walk for at least six hours in an eight hour day, in order to be able to perform *any* light work.

21 _____

22      [4] As the ALJ explained in the written decision, the ALJ gave greater weight to the
opinion of Mr. Duchesne over Dr. Moisan. AR 58-60. Plaintiff does not directly challenge the
23 ALJ's evaluation of Dr. Moisan's opinion, but focuses entirely on perceived deficiencies in Mr.
Duchesne's opinion. Thus, all references to Vocational Expert testimony in this section refer to
24 the testimony of Mr. Duchesne.

1   SSR 83-10, *available at* 1983 WL 31251, at *5-6. In fact, SSR 83-10 discusses these

2   requirements in the disjunctive: "[e]ven though the weight lifted in a particular light job may be

3   very little, a job is in [the light work] category when it requires a good deal of walking or

4   standing." *Id.* Thus, while the *full* range of light work requires both the ability to stand/walk and

5   the ability lift/carry to certain thresholds, *individual* jobs within the category may only require

6   one or the other. As this situation cannot be resolved solely by reference to the Grids, a

7   Vocational Expert is the appropriate source of information as to whether any light work jobs

8   exist which fit within the requirements of a claimant's RFC. *Thomas*, 278 F.3d at 960.

9          Here, the ALJ recognized he was unable to apply the Grids. AR 57. The ALJ consulted

10  with a Vocational Expert to determine what, if any, light work Plaintiff was able to perform. AR

11  72-207, 283-84, 286. The Vocational Expert identified several light work jobs which were

12  consistent with the ALJ's RFC finding. AR 57-58, 283-84, 286. Contrary to Plaintiff's argument,

13  the ALJ properly found Plaintiff was not capable of the full range of light work, and properly

14  solicited Vocational Expert testimony to determine whether Plaintiff was capable of performing

15  any light work existing in significant numbers in the national economy.

16         Third, Plaintiff argues the Vocational Expert's job number data was unsupported by

17  substantial evidence. However, a Vocational Expert's "recognized expertise provides the

18  necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18. Though Plaintiff

19  challenges the validity of the Vocational Expert's testimony by reference to data contained in Job

20  Browser Pro, Plaintiff has offered, at most, an alternative interpretation of the record. *See, e.g.*,

21  *Valenzuela v. Colvin*, 2013 WL 2285232, *4 (C.D. Cal. 2013) ("the data presented by plaintiff

22  was unaccompanied by any analysis or explanation from a vocational expert or other expert

23  source to put the raw data into context. . . . [further, the Job Browser Pro] data, at best, would

24

ORDER ON PLAINTIFF'S COMPLAINT - 15

1  support an alternative finding regarding the number of job[s] . . . ."); *Merryflorian v. Astrue*,

2  2013 WL 4783069, *4-5 (S.D. Cal. 2013) (citing numerous cases for the proposition that a

3  conflict between Job Browser Pro data and a Vocational Expert's testimony concerning job

4  numbers does not undermine the ALJ's reliance on the Vocational Expert). In the same vein, the

5  Vocational Expert testified that jobs such as "small products assembly" jobs can be performed by

6  an individual with the ALJ's RFC finding, and based this conclusion on his personal experience

7  and observations. AR 286-87. The ALJ did not err by relying on the Vocational Expert's

8  testimony on this point.

9        Fourth, Plaintiff argues the ALJ erred by finding Plaintiff was capable of performing the

10  sedentary job of "escort driver, DOT # 919.663-022," because the RFC finding limited him to

11  sit/stand for no more than four hours in an eight hour day. However, the ALJ did not find

12  Plaintiff was limited in his ability to *sit*. AR 29. The ALJ found Plaintiff was unable to stand or

13  walk for no more than four hours in an eight hour day. AR 29. As the ALJ observed during the

14  supplemental hearing, the fact the ALJ's RFC finding restricts Plaintiff to no more than four

15  hours of standing/walking in an eight-hour workday does not mean the ALJ found Plaintiff

16  limited in his ability to sit. AR 167. The Vocational Expert agreed, and noted that a limitation to

17  standing/walking for less than six hours in an eight-hour workday did not impact whether

18  Plaintiff could perform sedentary work. AR 168. Thus, Plaintiff has failed to demonstrate how

19  the ALJ erred by finding Plaintiff could perform the job of escort driver.

20        Fifth, Plaintiff argues the Vocational Expert improperly testified to the aggregate number

21  of assembly jobs available in several discrete occupations: "final assembler, optical goods, DOT

22  # 713.687-018; lens inserter, DOT # 713.687-026; fishing reel assembler; DOT # 732.684-062;

23  lamp shade assembler, DOT # 739.684-094; compact assembler, DOT # 739.687-066; wafer

24

1   breaker semi-conductor, DOT # 726.687-046." AR 58. *See* AR 301-03. Plaintiff argues this was

2   improper, as 20 C.F.R. § 404.1566(b) requires a Vocational Expert to state the number of

3   available jobs for each individual occupation, rather than discussing them in aggregate. The

4   Court is not persuaded by Plaintiff's argument. The regulation indicates "[w]ork exists in the

5   national economy when there is a significant number of jobs (*in one or more occupations*)

6   having requirements which you are able to meet with your physical or mental abilities and

7   vocational qualifications." 20 C.F.R. § 404.1566(b) (emphasis added). The regulation also notes

8   "isolated jobs that exist only in very limited numbers in relatively few locations outside of the

9   region where you live are not considered 'work which exists in the national economy.'" *Id.* 20

10  C.F.R. § 404.1566(b) does not address a situation presented by the Vocational Expert's

11  testimony in this case. Here, the Vocational Expert noted there were approximately a half-dozen

12  jobs under the larger umbrella of "assembly" jobs which Plaintiff could perform. AR 284. In

13  aggregate, the Vocational Expert noted these totaled to approximately 30,000 jobs nationally and

14  500 jobs in the state of Washington. AR 284, 302-03. This testimony is consistent with the

15  definition of "work exist[ing] in the national economy," as it describes work available in "one or

16  more occupations." 20 C.F.R. § 404.1566(b).

17          Assuming for the sake of argument that the Vocational Expert's testimony was error,

18  Plaintiff has failed to show harm. In addition to these aggregate assembly jobs, the Vocational

19  Expert also identified the following light and sedentary jobs Plaintiff could perform: Small

20  Products Assembler I, DOT # 706.684-022; Agricultural Sorter, DOT # 529.687-186;

21  Electronics Assembler, DOT # 726.687-010; and Escort Driver, DOT # 919.663-022. AR 57-58;

22  283-85. As Plaintiff has failed to demonstrate the ALJ erred by relying on these additional

23  identified occupations, the ALJ's Step Five finding is still supported by substantial evidence, and

24

1    any error in the ALJ's reliance on aggregate testimony from the Vocational Expert was harmless.

2    *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (noting error is harmless if it is

3    "inconsequential to the ultimate nondisability determination").

4            Sixth, Plaintiff argues the ALJ erred by failing to account for repeated work absences in

5    his hypothetical questions to the Vocational Expert. Dkt. 17, p. 5, n. 4. Plaintiff's argument is

6    premised on the fact he lives approximately 55 miles from his treatment providers at the

7    Veteran's Administration Hospital in Seattle, WA. Thus, the argument goes, he will frequently

8    be absent from work for half days or whole days in order to attend medical appointments.

9    Plaintiff, however, offers no argument or legal authority as to how the distance between his

10   residence and his medical providers is a work-related limitation, let alone a relevant fact either

11   the Commissioner or this Court may consider. Indeed, Social Security regulations explicitly state

12   that for purposes of Step Five, "[i]t does not matter whether . . . [w]ork exists in the immediate

13   area in which you live." 20 C.F.R. § 404.1566(a)(1).[5]

14           Finally, the Court notes Plaintiff has attached appendices to his opening and reply briefs,

15   which appear to contain vocational data obtained from Job Browser Pro and SkillTran,

16   respectively. *See* Dkt. 13, Exh. 1; Dkt. 17, Exh. 1. These exhibits are improper. The Court is

17   constrained to review whether the ALJ's conclusion is supported by substantial evidence in the

18   record as a whole. 42 U.S.C. § 405(g). *C.f.*, *Taylor v. Comm'r, Soc. Sec. Admin.*, 659 F.3d 1228,

19   1232 (9th Cir. 2011). The Court lacks authority to supplement the administrative record on

20

21

22           [5] Plaintiff block-quotes this regulation in another section of his brief, yet deliberately
     omitted subsections (a)(1) through (a)(3). *See* Dkt. 13, p. 17. The Court notes Plaintiff's selective
     editing of the regulations relevant to the disposition of his case. *See Cherry v. City College of*

23   *San Francisco*, 2006 WL 6602454, at *7-8 (N.D. Cal., Jan. 12, 2006) (disapproving of plaintiffs'
     "clever use of brackets" in a brief in order to portray relevant regulations in a light more

24   favorable to plaintiffs' position).

1    appeal, other than through the method articulated in Sentence Six of 42 U.S.C. § 405(g). As

2    Plaintiff has not attempted to demonstrate how these appendices constitute new, material

3    evidence, nor has Plaintiff shown good cause for failing to obtain this evidence at an earlier stage

4    of the proceeding, the Court has not considered Plaintiff's proposed appendices in evaluating

5    whether the ALJ's conclusion is supported by substantial evidence in the record as a whole. *See*

6    *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

7          Because the ALJ properly supported his Step Five findings with substantial evidence, the

8    ALJ met his burden at Step Five to demonstrate Plaintiff was able to perform work existing in

9    significant numbers in the national economy.

10    V.     Whether the ALJ Erred by Failing to Consider Plaintiff's PTSD a Severe Impairment
             at Step Two of the Sequential Evaluation

11          Throughout Plaintiff's briefing, Plaintiff notes the ALJ did not assess whether Plaintiff's

12    PTSD was a severe impairment at Step Two of the sequential evaluation. *See, e.g.*, Dkt. 13, pp.

13    6-8. However, Plaintiff only discusses this issue to argue the ALJ should have obtained more

14    mental health opinion evidence, or to argue Plaintiff met the requirements of an unspecified

15    mental health listing. *Id.* Plaintiff does not identify a Step Two issue in the opening section of his

16    brief as he was required to do by this Court's scheduling order, does not discuss the Step Two

17    standard at all in his briefing, and does not argue how any error in the ALJ failing to discuss

18    whether Plaintiff's PTSD was severe was harmful at Step Two. To the extent Plaintiff was

19    attempting to argue a Step Two error, Plaintiff has the burden of demonstrating harmful error,

20

21

22

23

24

1   and Plaintiff's failure to articulate this argument with sufficient specificity means it is waived.

2   *See Sanders*, 556 U.S. at 410. *See also Greger*, 464 F.3d at 973, *Bisuano*, 584 Fed.Appx. at 514.[6]

3                                **<u>CONCLUSION</u>**

4        Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

5   properly concluded Plaintiff was not disabled. Therefore, the Court orders this matter be

6   affirmed pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for Defendant and

7   the case should be closed.

8        Dated this 31st day of January, 2017.

9

10                                          David W. Christel
                                          United States Magistrate Judge
11

12

13

14

15

16

17

18

19

20

21

22   _____

23        [6] Nothing about this decision would prevent Plaintiff from re-arguing his PTSD was a
     severe impairment in a new application. The Court notes Plaintiff's insurance status does not
24   expire until June 30, 2017. AR 21.

ORDER ON PLAINTIFF'S COMPLAINT - 20